## Oates, Commissioner, et al. v. Simpson, Tax Com'r, et al.

June 25, 1943.

434

Earl S. Wilson, Assistant Attorney General, for appellants.

S. H. Brown for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing in part and affirming in part.

The appelles, U. J. Simpson, Tax Commissioner of Grayson County, and others who are tax commissioners of their various counties, suing for themselves and others in the commonwealth similarly situated, filed this declaratory judgment action in the Franklin circuit court against the Commissioners of the State Revenue Department and the State Tax Commission, in which they sought the opinion of the court as to whether or not they were entitled to their statutory commission on exempt personal property not exceeding $250 to a tax payer with a family, which amount is exempt from taxation to such class of tax payers by section 170 of our Constitution. Plaintiffs (appellees) contend and so allege in their petition that under the provisions of sections 132.420 and 132.450 of KRS, they, as tax commissioners for their respective counties, are required to "assess all the real and personal property in his county at its fair cash value;" also, that by the provisions of section 132.590 of the same publication they are required to return their assessment books to the county court clerk of the county with an affidavit showing that it contained "the total assessed value of the property listed by him as shown by his assessment books," and that the

county court clerk after proving same shall "allow eighty percent of the amount due him, based upon his assessment." They, therefore, contend that, since they are required to assess *all* property in their respective counties and that the county court clerk, when their assessment roll is turned over to him, shall allow eighty per cent of the commissions due the assessor, based upon valuation of the property made by him—including the $250 exemptions to housekeepers with families, which, under the provisions of the statute, is later deducted by the county court clerk before submitting the assessment to the State Revenue Commission for its supervision and corrections after the County Board of Equalization has acted upon the total assessments of the county—they should receive compensation for the gross amount of their listings.

In addition to asking for a declaration of the court upon the question above stated plaintiffs also sought to recover all commissions so accruing to them under their theory of the law, for the past five years, which, of course, is done without any application to the proper county authorities to surcharge the various settlements made by them within that time, and in which they were disallowed commission for the assessment of the exempted item of property supra. It is, therefore, doubtful if such a right of recovery may be obtained in a declaratory judgment proceeding when there is an open and efficient remedy to the litigant seeking such declaration in a court having jurisdiction of the subject matter. But in view of the conclusion we have reached it will be unnecessary to discuss or determine any of the questions raised by that part of the petition relating to the recovery of compensation for the past five years.

The court on submission declared that plaintiffs were entitled to their percentage compensation on the $250 exemption referred to, and which was based solely upon the literal language of the sections of the statute, supra; but the court rejected plaintiffs' contention that they were entitled to recover for any past due compensation which had been disallowed in each annual settlement they made. From that judgment defendants and appellants prosecute this appeal, and from the ruling of the court disallowing recovery for alleged past due compensation plaintiffs moved for and obtained a cross appeal in this court.

On October 20, 1904, this court handed down its opinion in the case of Powers v. Osbon, 118 Ky. 810, 82 S. W. 419, which was a suit by the then tax assessor, F. M. Powers, of Menifee county, in which he sought for himself and others in the commonwealth similarly situated the right to compensation on the $250 exemption to housekeepers made by section 170 of the Constitution, but which had been disallowed him by the proper county authorities, and he sought by his mandatory action to require such authority to certify his claim, based on such exemption, for payment. The Menifee court dismissed his petition and that judgment was affirmed in the opinion rendered on that appeal.

Plaintiffs' learned counsel seek to distinguish that case from the instant one—basing the distinction on the different phraseology of the statutes relating to the question as it existed at the time that opinion was rendered and the same statutory language now in existence, and found in the sections of KRS, supra. The law as it existed at that time was contained in section 4052 of the 1903 and 1909 editions of Carroll's Kentucky Statutes, which read: "All taxable estate shall be assessed and valued as of the fifteenth of September in the year listed, and the person owning or possessing the same on that day shall list it with the assessor, and remain bound for the tax, notwithstanding he may have sold or parted with the same." The next section (4053) said, in substance, that the assessor from his knowledge—plus the statement made to him by the persons whose property was being assessed, and from other evidence that he may obtain upon the oath of witnesses—"shall fix the value upon all the estate listed with him for taxation at its fair cash value," etc. The section then proceeds to fix the rate of compensation as designated therein. Section 4072 of the same editions of the statutes prescribes, inter alia, that on presentation to the Auditor for payment that officer "shall draw his warrant on the State Treasurer for eighty per cent of such allowance, and shall draw his warrant on the [State] Treasurer for the remainder due the assessor, as herein provided," after corrections by other provided agencies are made. The present law with reference to the time and amount of compensation paid to the assessor is contained in section 132.590 of KRS, supra, where it is prescribed that: "When the county board of supervisors has completed its work and its report has been certified to the Depart-

ment of Revenue showing the total assessed value of the property of the county, the county tax commissioner shall present his account for the balance due to the county court, which shall be allowed in the manner provided by law. Upon approval by the Department of Revenue of the balance due, the Department of Finance shall authorize payment to the county tax commissioner of the remaining twenty percent due, based on the total value of the assessment made by him as finally equalized by the county board of supervisors.''

Thus we see that in the law as it existed at the time of the rendition of the Powers opinion, supra, the statutes prescribed an initial payment to the assessor of only eighty per cent of the tax list made out by him when returned to the county clerk, retaining the balance of twenty per cent until the assessment passed through the various agencies and departments created by the respective statutes for final computation of the amount of each tax payer's assessment upon which taxes might be collected. We thus see that in some portions of the entire assessment provisions the property to be assessed is designated as ''taxable'' property (section 132.220 of KRS); whilst in other sections in the same statute the property is referred to as the property listed by the assessor—without reduction of any exemptions or other lawful deductions.

The rule for the interpretation of statutes is that literal language contained in some parts of it, in apparent conflict with the general scheme should surrender to the general purpose and intent of the legislature as gathered from all parts of the statute. Applying that rule to the present statute relating to the subject we find that the duties of the tax commissioner under the present law—and all prior ones so far as we are aware—are to lay the foundation upon which is built up the amount of taxable property upon which ad valorem taxes may be levied by the state and its various subdivisions. That being the sole purpose of assessments to be made by the tax commissioners, it is quite apparent that the legislature in enacting our present law was motivated by that purpose and that it did not intend in speaking of property to be assessed to embrace any nontaxable property upon which the assessor's compensation might be calculated, and we construe the Powers opinion to say as much.

But, independently of that opinion, and also independently of the rule for interpretation of the statutes referred to, there are four pertinent points which should be taken into consideration in construing our present assessing statute, which are: (1) To allow compensation on the list made out by the assessor without any deductions for mistake, exemptions, or other causes would open the door for the assessor to increase the value of assessed property—even higher than the list made out by the property owner—for the purpose of swelling the total amount listed by him, and thereby increase his compensation, an illustration of which would be where the property owner would list his personal property at, say $1,000, and the assessor would increase the amount to $1,200 or $2,000. According to the literal interpretation of the statute as contended for by plaintiffs, the tax commissioners would be entitled to the compensation of their increased valuation, thus creating the incentive to swell their assessment in order to gain the entailed reward—which situation we are constrained to conclude the legislature, did not intend to create.

(2) It will be remembered that our present law, as did the law as it existed when the Powers opinion was rendered, prescribed for an initial payment to the tax assessor based upon the face of his return of only eighty per cent of the commission due him, thereby deferring payment of the remaining twenty per cent until his listing had gone through the provided mills for giving to it its final touches and completing it so as to show the amount of taxes due from each tax payer. Then upon application, as provided in the statute, the remaining twenty per cent may be paid. If appellants' contention be the correct one, it would be a difficult task to furnish a reason why the deferred payment of the twenty per cent due the tax commissioners should be made, or the purpose thereof, since if he is entitled to his percentage commission upon the face of his finished return upon delivery of it to the county court clerk—regardless of what might be done to it by other supervising agencies— nothing would be gained by withholding payment of any part of his commission. One of the agencies through which his assessments pass is the county court clerk, who deducts the constitutional exemption of $250 for each housekeeper with a family, which the assessor reports on his list, and other supervising agencies make other corrections. It was no doubt contemplated by the

legislature that such reductions would scarcely in any case be greater than twenty per cent of the percentage allowed as based on the contents of the assessment roll as made out by the assessor, and which he delivers to the county court clerk. It is, therefore, utterly inconceivable to us that the postponement of payment of the twenty per cent could serve any other purpose than to take care of any deductions or errors appearing upon the face of the list as made out by the assessor by any subsequent reviewing agency.

(3) Even if we should entertain doubt upon any of the considerations thus far discussed, then we are confronted with a situation where a statute, substantially similar to the one now contained in the sections of KRS, supra, since 1918, has been contemporaneously construed—not only by all officials having duties to perform thereunder as not entitling the commissioners to a percentage on the $250 exemptions, supra—but that his percentage should be calculated only on property subject to taxation. In addition to such contemporaneous construction by administrative officers, the Attorney General on February 20, 1930, gave an opinion that under the then existing law (which was the same or substantially the same at the time as the sections of KRS supra) the county assessor was not entitled to the compensation here contended for, and in which the Powers case was cited with approval. At no time since its enactment in 1918 has the present statute been construed any other way, and it appears that no contention to the contrary has ever been officially presented, except the one the Attorney General referred to, which is reported in volume 1929-30, page 700 of the opinions of the Attorney General of Kentucky.

(4) Lastly—and as the fourth point for consideration—if it is the duty of the tax commissioner to list all property within his county and that his compensation must be based on all the property listed by him (and which is the sole basis of the action), then it would be the duty of the tax commissioner to list all of the exempted property contained in section 170 of the Constitution, including all public property of the state, of the county, and of all of the other subdivisions of the state government; also, all houses of religious worship and the grounds upon which they stand; places of burial not held for private or corporate profit; all institutions

of purely public charity and education, and all parsonages owned by religious societies. Such literal requirement would embrace among the public. buildings, all state buildings, county buildings, churches, cemeteries and every exemption contained in the section of the Constitution referred to. In counties where state buildings are located the listings, at least in most of them, would run up into millions, and in counties including municipal governmental property would correspondingly increase. We are confident that the legislature in enacting our present law never intended any such absurdity. The exemption of $250 from personal property of a housekeeper with a family stands on an equal par with the other exemptions we have enumerated. The only difference is that a calculation is required to ascertain the net amount of personal property upon which the housekeeper with a family should pay taxes. Section 132.450 of KRS, supra, requires the tax commissioner from his knowledge, or evidence available to him, to correctly value the property listed by him (for tax purposes) and it is incidental and necessary for him in discharging that duty to ascertain the value of all the tax payers' personal property in order to reveal whether or not he owns any such property over and above his exemptions. The calculation to ascertain that fact is to be made by the county court clerk under the provisions of section 132.550 of KRS. The routine thus prescribed for ascertaining whether or not housekeepers with a family own any property upon which taxes may be collected does not differentiate the $250 exemption allowed from the others set forth in the section of the Constitution, supra—all of which clearly demonstrates the unsoundness of the contention made in behalf of the county tax commissioners and forces the conclusion that no such interpretation should be made.

Upon the whole, therefore, we are driven to the conclusion that the trial court committed error in adjudging appellees entitled to the compensation claimed by them—from which it results that the claimed right of recovery for past assessments covering the preceding five years was correctly determined by the court.

Wherefore, the judgment is reversed on the appeal and affirmed on the cross appeal.

The whole Court sitting.