**Daniel Duwayne GILBERT, Appellant,**

v.

**COMMONWEALTH of Kentucky,
Appellee.**

Supreme Court of Kentucky.

July 6, 1982.

As Modified on Denial of Rehearing
Sept. 21, 1982.

Jack Emory Farley, Public Advocate, M. Gail Robinson, Asst. Public Advocate, Frankfort, for appellant.

Steven L. Beshear, Atty. Gen., R. Thomas Carter, Asst. Atty. Gen., Frankfort, for appellee.

STEPHENSON, Justice.

Gilbert was indicted for attempted kidnapping (KRS 506.010), first-degree wanton endangerment (KRS 508.060) and first-degree robbery (KRS 515.020) of Janie Watson. He was also indicted for kidnapping (509.040), first-degree rape (KRS 510.040) and first-degree robbery (KRS 515.020) of Donna Gnau on the same day. A jury found Gilbert guilty on all counts and fixed his punishment at a total of 85 years in the penitentiary. The trial court directed that the sentences run concurrently for a sentence of twenty years. We reverse the convictions for first-degree wanton endangerment and attempted kidnapping and affirm the other convictions.

Watson was working at a Foto Fair when a man, she later identified as Gilbert, came to the booth and said, "this is a hold-up." He laid a gun on the counter with his hand on it. The gun was never pointed at her. Gilbert ordered Watson to put the money in a bag and to go out the door to his car. When he told Watson to get into the car she refused. As she moved back toward the booth, the man held the money outside the car and told her to come and get it. He told her the gun was not real. She went into the booth and after getting the license number of the car Gilbert was driving contacted the police. The detective checked the license number given by Watson and learned it was registered to a Carolyn Jones. He went to the address, the car was not there, but he learned that Gilbert and Jones lived there. He then prepared a photo display and Watson identified Gilbert.

In the meantime, Gnau was working at another Foto Fair when a man she later identified as Gilbert came in and said it was a robbery. He alluded to a gun in his belt. She placed money and checks in a bag, Gilbert then told her to go out and get in the car. He threatened to kill her when she refused. Gnau then got in the front seat on the floor and Gilbert covered her. She saw a Pabst styrofoam cup underneath the seat. Gilbert drove to a wooded area and dragged her through some bushes and proceeded to force her to perform fellatio, raped her, and left her. Gnau contacted the police, gave a description of the car, and the detective interviewing her showed her the same photo display viewed by Watson. She identified Gilbert from the same photo display. The two detectives then again proceeded to the address for the car driven by Gilbert. This time the car was in the driveway. Through the window of the car the detectives observed the styrofoam cup and a

blanket. They entered the house through the unlocked front door, saw money and a gun on a table. Gilbert was located in a shower and arrested. The pistol and money were introduced into evidence. The women identified the gun and made an in-court identification of Gilbert.

Gilbert presented an alibi defense.

Gilbert asserts that his arrest without a warrant was illegal and the evidence obtained in the house, the money and pistol, should have been excluded. In support of this assertion Gilbert relies on *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 539, 639 (1980). This opinion discussed two defendants, Payton and Riddick. As to Payton, after two days of intensive investigation, New York detectives had assembled evidence sufficient to establish probable cause to believe Payton had murdered the manager of a gas station. Officers without a warrant of arrest went to Payton's apartment and entered forcibly. Payton was not at home but evidence in plain view was seized. Riddick was arrested in his home without a warrant for two armed robberies almost a year after he had been identified by the victims and two or three months after the police had learned his address. Narcotics were seized and Riddick was subsequently indicted on a narcotics charge. The state courts held that the intrusion into the homes without an arrest warrant was authorized by the New York Code of Criminal Procedure.

■ The Supreme Court held that the Fourth Amendment to the Constitution of the United States prohibits the police from making a warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest. The operative phrase here is "routine felony arrest," those situations where obviously the police have ample time to procure a warrant of arrest. The ruling in both cases is narrow and is based on an absence of exigent circumstances. In *Payton's* case the court noted that it is arguable that the warrantless entry might have been justified by exigent circumstances, but that the New York courts relied on the statute and not on

this justification. We are of the opinion that the warrantless entry here is justified by the exigent circumstances displayed in the factual situation. Thus the action of the detectives is not within the prohibitions of *Payton*.

■ We turn now to what we consider to be two errors by the trial court, the convictions for wanton endangerment and attempted kidnapping of Watson.

KRS 508.060(1) provides:

"A person is guilty of wanton endangerment in the first degree when, under circumstances manifesting extreme indifference to the value of human life, he wantonly engages in conduct which creates a substantial danger of death or serious physical injury to another person."

Here the gun was never pointed at Watson, and in the circumstances of this case it is obvious to us that the essential elements of KRS 508.060 are not present.

■ Additionally, the possession and use of the pistol did not constitute an offense separate from the first degree robbery charge for which he was being tried and was convicted. One of the elements elevating robbery to the highest degree, being armed with a deadly weapon, cannot be separated and also used to convict on a separate offense. See *Whorton v. Commonwealth*, Ky., 570 S.W.2d 627 (1978).

We are of the opinion the charge of first degree wanton endangerment was erroneously submitted to the jury.

■ The conviction of Gilbert for the attempted kidnapping of Watson poses an unusual question that we have not addressed before. The problem lies in the application of the exemption statute, KRS 509.050, which provides:

"A person may not be convicted of unlawful imprisonment in the first degree, unlawful imprisonment in the second degree, or kidnapping when his criminal purpose is the commission of an offense defined outside this chapter and his interference with the victim's liberty

occurs immediately with and incidental to the commission of that offense, unless the interference exceeds that which is ordinarily incident to commission of the offense which is the objective of his criminal purpose. The exemption provided by this section is not applicable to a charge of kidnapping that arises from an interference with another's liberty that occurs incidental to the commission of a criminal escape."

The purpose of the statute is to prevent misuse of the kidnapping statute to secure greater punitive sanctions for rape, robbery and other offenses which have as an essential or incidental element a restriction of another's liberty.

 We have approached the problem of the application of the exemption statute on a case-by-case basis in evaluating those situations where kidnapping is charged together with another offense which involves restraint of liberty, such as first-degree robbery. Generally we have determined that "if the victim of a crime is going to be restrained of his liberty in order to facilitate its commission, the restraint will have to be close in distance and brief in time in order for the exemption to apply." *Timmons v. Commonwealth*, Ky., 555 S.W.2d 234, 241 (1977). Otherwise the offender will be guilty of a kidnapping charge as well. We have considered the exemption statute in *Calloway v. Commonwealth*, Ky., 550 S.W.2d 501 (1977); *Spencer v. Commonwealth*, Ky., 554 S.W.2d 355 (1977); *Griffin v. Commonwealth*, Ky., 576 S.W.2d 514 (1978), and *Seay v. Commonwealth*, Ky., 609 S.W.2d 128 (1981). These cases illustrate an application of the case-by-case basis for testing the exemption statute. In examining the situations in the above cited cases, we see that at some point when this court has determined that the restraint has progressed beyond that which occurs immediately with and incidental to the commission of an offense, such as rape and robbery, the offender is guilty of kidnapping and the exemption statute does not apply. Once the restraint goes beyond the "immediate and incidental restraint," it is kidnapping or unlawful imprisonment. In this additional step that authorizes a kidnapping conviction there is no room to insert the offense of attempted kidnapping. In our examination of the above cases we do not see, nor can we visualize, a situation where there could be a charge of attempted kidnapping or unlawful imprisonment where the exemption statute is involved. Here it might be argued that Gilbert committed the offense of kidnapping for the reason that the restraint was beyond that incidental to robbery. The offense however could not be attempted kidnapping. It was error for the trial court to submit this issue to the jury. The other assertions of error are without merit.

The judgment of conviction with respect to first-degree wanton endangerment and attempted kidnapping of Janie Watson is reversed with directions to dismiss these charges. In all other respects the judgment of the trial court is affirmed.

All concur.