John Anthony HARRIS, Appellant,

v.

COMMONWEALTH of
Kentucky, Appellee.

No. 88–SC–45–MR.

Supreme Court of Kentucky.

March 15, 1990.

As Modified on Denial of
Rehearing Sept. 6, 1990.

J. David Niehaus, Deputy Appellate Defender, Jefferson Dist. Public Defender, Louisville, for appellant.

Frederic J. Cowan, Atty. Gen., Ian G. Sonego, Asst. Atty. Gen., Frankfort, for appellee.

STEPHENS, Chief Justice.

Appellant, John Anthony Harris, was convicted of kidnapping, wanton murder, tampering with physical evidence, and abuse of a corpse. He received these sentences: life without possibility of parole for 25 years for the kidnapping; life imprisonment for murder; five years' imprisonment for tampering; and 12 months and a $500 fine for abuse of a corpse. He appeals his conviction as a matter of right. We affirm.

Testimony at trial was that the appellant planned on "playing a joke" on Sabra Ann Diamond and invited James Timothy Elmore to join him. Testimony established that appellant and Elmore planned to stop Ms. Diamond's car and shoot a gun into the air to scare her. On the night of April 8, 1986, the pair followed her in a car driven by Elmore. They stopped her on a deserted road by blocking her car with Elmore's car. Carrying a loaded, cocked pistol, appellant approached her car on the driver's side. Ms. Diamond refused to speak with him. The appellant then pointed the pistol at the victim's head, and she opened the car door and "lunged" out at him. When she reached for the gun appellant pulled the trigger. The victim died from a gunshot wound to the head.

Appellant confessed that he and Elmore placed Ms. Diamond's body in Elmore's car. They drove to LaGrange and dragged the victim's body into the woods, where appellant removed her clothes and covered the corpse with leaves. There was evidence that the corpse was subjected to sexual intercourse. Elmore testified that he observed appellant commit the act. Appellant took the victim's purse from her car. The police determined that a small amount of money was missing from her purse. As a result, appellant was also charged with robbery and tampering with physical evi-

dence. The jury acquitted him on the robbery charge.

Appellant presents eight assignments of error. We will address them in the order presented in his brief.

■ First, appellant claims that his confession to the police should have been suppressed because it was obtained in the absence of counsel after he had repeatedly requested a lawyer. The trial judge held an evidentiary hearing pursuant to RCr 9.78 and found that Harris's statement was given voluntarily and that his claim of a request for counsel was not credible. The record shows that the trial court's ruling is supported by substantial evidence, and its factual findings are therefore conclusive. RCr 9.78; *Halvorsen v. Commonwealth*, Ky., 730 S.W.2d 921 (1986), *cert. denied*, 484 U.S. 970, 108 S.Ct. 468, 98 L.Ed.2d 407 (1987). The motion to suppress appellant's confession was properly overruled.

■ Appellant next claims that it was error for the trial court to instruct the jury on wanton murder, because there was insufficient evidence from which the jury could conclude that he acted under "circumstances manifesting extreme indifference to human life," as required by KRS 507.020(1)(b). Appellant failed to preserve this issue by making a specific objection. RCr 9.54(2); *Commonwealth v. Duke*, Ky., 750 S.W.2d 432 (1988). Even if appellant had properly preserved this allegation of error, his argument is without merit. The record shows that the evidence was sufficient to support the wanton murder instruction: appellant was carrying a loaded, cocked pistol, and admitted intent to point it at the victim but did not admit intent to cause her death. *Nichols v. Commonwealth*, Ky., 657 S.W.2d 932 (1983), *cert. denied*, 465 U.S. 1028, 104 S.Ct. 1289, 79 L.Ed.2d 691 (1984). The wanton murder instruction was proper.

The next series of alleged errors involves the propriety of appellant's kidnapping conviction.

■ Appellant argues that a capital offense was neither alleged nor proved, with respect to kidnapping. His argument has two prongs. First, he claims that the language of the indictment did not properly charge a capital offense. Second, he complains that the kidnapping instruction given at the close of the guilt/innocence phase of trial failed to require proof of the victim's death.

As to the first argument, appellant correctly states that kidnapping is a capital offense when the victim is not released alive. KRS 509.040(2). Appellant argues that since the indictment did not specifically allege that Ms. Diamond was not released alive, capital kidnapping was not alleged. Appellant favors form over substance. The record shows that count one of both the original indictment and an amended version stated that kidnapping was being charged as a capital offense. Count two stated that the victim suffered death. Both the capital proceeding notice and the bill of particulars noted that the kidnap victim died as a result of the appellant's actions. We hold, therefore, that the appellant was not misled by the indictment as to the penalty and its basis. *Wylie v. Commonwealth*, Ky., 556 S.W.2d 1 (1977). The indictment was sufficient. RCr 6.12; *Howard v. Commonwealth*, Ky., 554 S.W.2d 375 (1977).

■ We find appellant's second argument to be a curious one. At trial, defense counsel argued against instructing the jury on capital kidnapping, and the record shows that no capital kidnapping instruction was given in the guilt/innocence phase. Yet appellant now complains that the kidnapping instruction submitted to the jury at the close of evidence did not require proof of the victim's death. This is the very element that enhances kidnapping to a capital offense. Appellant attempts to assign error to the granting of the very relief he requested.

Further, appellant's allegation of error is without merit. There was sufficient evidence presented for the jury to find that the victim was not released alive. After the jury heard all of the evidence, it found that appellant had murdered the kidnapping victim. Any error was therefore harmless.

Next, appellant argues that his aggravated sentence of life imprisonment without possibility of parole for 25 years for kidnapping is error because the jury did not find one of the aggravating circumstances *enumerated* in KRS 532.025(2)(a). In making his argument, appellant points to the language in KRS 532.025(3), which states that, "In all cases unless at least one of the statutory aggravating circumstances *enumerated* in subsection (2) of this section is so found, the death penalty or the sentence to imprisonment for life without benefit of probation or parole until the defendant has served a minimum of twenty-five years of his sentence, shall not be imposed" (emphasis added).

The record shows that the aggravating circumstance which the jury found beyond a reasonable doubt and designated in writing was that "in the course of the commission of the Kidnapping, [Harris] murdered Sabra Ann Diamond." Appellant is correct in stating that this aggravating circumstance is not among the seven *listed* in 532.025(2)(a). However, he overlooks the introductory language of that very subsection, which expressly authorizes the judge and jury to consider "any aggravating circumstances otherwise authorized by law." Here, the "aggravating circumstance otherwise authorized by law" is provided by the penalty section of the kidnapping statute, KRS 509.040(2), which makes kidnapping a capital offense when the victim is not released alive.

We agree that subsection 3 of KRS 532.025 is inartfully drafted. We believe, however, that the reference in subsection 3 to "statutory aggravating circumstances enumerated in subsection 2" is a reference to all of subsection 2, not merely to that portion which lists specific aggravating circumstances. This interpretation finds support in subsection 1(b) of the statute. Subsection 1(b) directs the jury in all death penalty cases to determine the existence of any aggravating circumstances "as *defined* in subsection (2)," (emphasis added) and hence does not limit the jury's consideration to those aggravating circumstances that are specifically enumerated. *See Stanford v. Commonwealth*, Ky., 734 S.W.2d 781, 790 (1987). The literal language of the last sentence in subsection 3 is in apparent conflict with the statute's general purpose, as gathered from all parts of the statute. The literal language must surrender. *Oates v. Simpson*, Ky., 174 S.W.2d 505, 507 (1943).

Therefore, under the facts as they exist in this case, we hold that the jury found a proper aggravating circumstance to support the sentence of life without parole for 25 years.

Appellant next contends that it was double jeopardy to convict him of both murder and capital kidnapping. Appellant argues that murder does not require proof of any fact not included in *capital* kidnapping, and thus under the test set out in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), the murder charge must merge into capital kidnapping. This argument rests on the premise that proof of the victim's death is necessary to establish the offense of kidnapping under KRS 509.040. We disagree.

The elements of kidnapping and murder are set out in KRS 509.040(1) and 507.020, respectively.

**509.040. Kidnapping.—** (1) A person is guilty of kidnapping when he unlawfully restrains another person and when his intent is:

(a) To hold him for ransom or reward; or

(b) To accomplish or to advance the commission of a felony; or

(c) To inflict bodily injury or to terrorize the victim or another; or

(d) To interfere with the performance of a governmental or political function; or

(e) To use him as a shield or hostage.

**509.020. Murder.—** (1) A person is guilty of murder when:

(a) With intent to cause the death of another person, he causes the death of such person or of a third person; except that in any prosecution a person shall not be guilty under this subsection if he acted under the influence of extreme emotional disturbance for which there was a

reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be. However, nothing contained in this section shall constitute a defense to a prosecution for or preclude a conviction of manslaughter in the first degree or any other crime;

(b) Including, but not limited to, the operation of a motor vehicle under circumstances manifesting extreme indifference to human life, he wantonly engages in conduct which creates a grave risk of death to another person and thereby causes the death of another person.

Murder does not require proof that the victim had been restrained. Kidnapping does not require proof of death of the victim. Therefore, the offenses do not merge and there is no double jeopardy violation at the guilty/innocence phase of the trial. It is not until the sentencing stage that murder and kidnapping could merge. It is at this point that proof of the kidnapping victim's death is necessary to enhance kidnapping to capital kidnapping. *Cosby v. Commonwealth*, Ky., 776 S.W.2d 367, 373 (1989), *cert. denied*, —— U.S. ——, ——, 110 S.Ct. 880, 107 L.Ed.2d 963 (1990). *See Wager v. Commonwealth*, Ky., 751 S.W.2d 28, 30 (1988); *Hildwin v. Florida*, 490 U.S. 638, 109 S.Ct. 2055, 104 L.Ed.2d 728 (1989). In the case at bar, however, appellant was not twice punished for the same act, but rather was punished for two separate courses of conduct. There was no double jeopardy violation at this stage either. *Blockburger*, 52 S.Ct. at 182.

■ Focusing on the kidnapping instruction, appellant next advances the argument that he did not receive a unanimous verdict as required by RCr 9.82(1).

The kidnapping instruction given at the close of evidence in this case required the jury to find beyond a reasonable doubt that the appellant restrained Ms. Diamond without her consent and that in so doing, appellant intended 1) to commit a felony, or 2) to cause bodily injury or to terrorize. Appel-

lant correctly claims that when alternative grounds for finding guilt are presented in an instruction, all of these theories must be supported by the evidence to assure unanimity. *Boulder v. Commonwealth*, Ky., 610 S.W.2d 615 (1980), *overruled on other grounds, Dale v. Commonwealth*, Ky., 715 S.W.2d 227 (1986). Appellant claims that none of these unlawful purposes was shown beyond a reasonable doubt. He suggests that since the jury acquitted him of robbery, it could not have been relying on this felony to satisfy the first basis for a finding of guilt.

■ Appellant states that he could not raise this issue before the jury returned its verdict because of the number of possible verdicts available. However, if appellant believed that the instructions were improperly phrased in the alternative so as to create the possibility that the verdict would not be unanimous, he should have objected on this ground before the jury was sent back to deliberate. RCr 9.54(2).

Preservation issues aside, this is not a situation as in *Boulder, supra,* where it was clear that only one theory of guilt was supported by the evidence. In the case at bar, the record shows sufficient evidence to support the alternative grounds given in the kidnapping instruction for a finding of guilt.

As to intent to commit a felony, the question here is not whether appellant actually committed a felony, but whether he intended to do so at the time he unlawfully restrained Ms. Diamond. *McClellan v. Commonwealth*, Ky., 715 S.W.2d 464, 469 (1986), *cert. denied*, 479 U.S. 1057, 107 S.Ct. 935, 93 L.Ed.2d 986 (1987). The jury heard testimony from the medical examiner from which it could have concluded that the victim was still alive when appellant moved her body. The jury also heard testimony from Elmore that appellant and he were not certain the victim was dead when they moved her. The medical examiner also found evidence that the victim's dead body was subjected to sexual intercourse, and Elmore testified that he had observed appellant commit such an act. The state of the evidence is such that it would not be

clearly unreasonable for a juror to believe that appellant restrained the victim without her consent and did so with the intent to rape. *Boulder,* 610 S.W.2d at 617.

The second ground for finding guilt under the kidnapping instruction, an intent to cause bodily injury or to terrorize, also is supported by sufficient evidence. According to appellant's confession, he pulled out a concealed, loaded pistol when the victim rejected his attempts to converse after he forced her to stop her car on a deserted road at night. We hold that the evidence was sufficient to permit a jury to find beyond a reasonable doubt that appellant intended to terrorize or cause bodily injury to the victim at the time of the restraint.

■■■ Harris also argues that the kidnapping exemption statute, KRS 509.050, should have been applied to preclude the Commonwealth from proceeding on the kidnap charge. Appellant is entitled to the benefit of the exemption statute only if three factors are mandated by the evidence. First, appellant's criminal purpose must have been the commission of an offense defined outside KRS Chapter 509, which deals with kidnapping and related offenses. Second, appellant's interference with the victim's liberty must have occurred immediately with and incidental to the commission of that offense. Third, the interference must not have exceeded that which is ordinarily incident to commission of the offense referred to in step 1. KRS 509.050; *Griffin v. Commonwealth,* Ky., 576 S.W.2d 514, 516 (1978).

The exemption statute is tested on a case-by-case basis. *Gilbert v. Commonwealth,* Ky., 637 S.W.2d 632, 635 (1982), *cert. denied,* 459 U.S. 1149, 103 S.Ct. 794, 74 L.Ed.2d 998 (1983). In every case, however, the defendant must jump through all three of these hoops to be entitled to the benefit of the exemption. We think the appellant in this case failed to clear at least the third hoop.

When this Court has determined that restraint has progressed beyond that which occurs immediately with and incidental to the commission of an offense, the offender is guilty of kidnapping, and the exemption

statute does not apply. *Gilbert, supra.* That is the case here. Appellant argues that his criminal purpose was to harass the victim (a purpose outside Chapter 509), that the duration of restraint was very short, and that the restraint did not exceed that normally associated with the offense. We disagree.

As stated above, testimony established that appellant stopped the victim, approached her with a loaded, cocked pistol, pointed the pistol at her head, and then pulled the trigger when the victim lunged out of the car. The murder of the victim clearly exceeds the deprivation of liberty ordinarily incident to the harassment appellant claims to have intended, or to any of the other criminal purposes found in the kidnapping instruction. *See Moore v. Commonwealth,* Ky., 634 S.W.2d 426, 434 (1982). Appellant was not entitled to the benefit of KRS 509.050.

■■■ Appellant's final assignment of error is that the trial judge acted erroneously in excluding certain psychological evidence offered in the sentencing phase. The trial court relied on KRS 504.070(1), which states that "A defendant who intends to introduce evidence of his mental illness or insanity at the time of the offense shall file written notice of his intention at least twenty days before trial." Because appellant had not given the requisite notice, the trial court excluded evidence of appellant's mental state, offered by a clinical psychologist, but allowed the psychologist to testify regarding appellant's IQ and chances for rehabilitation.

Appellant argues that since he was offering the testimony in the sentencing phase for purposes of mitigation, and not as a defense to the crime, the notice provisions of KRS 504.070 should not apply.

In all cases for which the death penalty may be authorized, KRS 532.025(2) directs the jury to consider certain mitigating circumstances. Assuming that the psychologist's testimony would have been admissible under this statute, any error in excluding it was harmless. The testimony, taken by avowal, was that appellant suffered

from borderline personality disorder with narcissistic traits, depression, anxiety, and poor self-esteem, and had difficulty in interpersonal relationships as a result. However, the expert was permitted to testify about appellant's superior intellectual capabilities, his lack of prior criminal activity, his lack of a history of alcohol or drug abuse, and his amenability to rehabilitation. The jurors also heard from appellant's friends and family, who testified to mitigating circumstances as well. We also note that a jury in a death penalty case *recommends* a sentence, which is not binding on the judge. *Skaggs v. Commonwealth,* Ky., 694 S.W.2d 672, 679 (1985), *cert. denied,* 476 U.S. 1130, 106 S.Ct. 1998, 90 L.Ed.2d 678 (1986); KRS 532.025(1)(b). The trial judge heard the avowal testimony and was able to consider it in determining whether to reduce the sentence the jury had imposed. After considering the appellant's history, character, and circumstances, the trial judge imposed the sentence recommended by the jury. The exclusion of mental condition testimony, if error, was harmless.

For the foregoing reasons, appellant's conviction is affirmed.

STEPHENS, C.J., and COMBS, GANT, LAMBERT and WINTERSHEIMER, JJ., concur.

LEIBSON, J., dissents by separate opinion in which VANCE, J., joins.

LEIBSON, Justice, dissenting.

Respectfully, I dissent from that portion of the Majority Opinion which affirms the sentence of life without the possibility of parole for twenty-five (25) years on the kidnapping conviction. The Majority upholds the sentence on the basis that the murder of the victim in the course of the commission of kidnapping is an aggravating circumstance "otherwise authorized by law." The Majority so holds by quoting only a portion of the statute and despite the fact that no statutorily enumerated circumstances were found as required by KRS 532.025(2) and KRS 532.025(3).

Pursuant to KRS 509.040, kidnapping is a capital offense "when the victim is not released alive...."

KRS 532.030 provides that:

"When a person is convicted of a capital offense he shall have his punishment fixed at death, or at a term of imprisonment for life without benefit of probation or parole until he has served a minimum of twenty-five (25) years of his sentence, or to a sentence of life, or to a term of not less than twenty (20) years."

KRS 532.025(2) provides:

"In all cases of offenses for which the death penalty may be authorized the judge shall consider, or he shall include in his instructions to the jury for it to consider, any mitigating circumstances or aggravating circumstances otherwise authorized by law *and* any of the following statutory aggravating ... circumstances which may be supported by the evidence." (Emphasis added)

KRS 532.025(3) provides in relevant part: *"In all cases unless at least one (1) of the statutory aggravating circumstances enumerated in subsection (2) of this section is so found,* the death penalty or the sentence to imprisonment for life without benefit of probation or parole until the defendant has served a minimum of twenty-five (25) years of his sentence, shall *not* be imposed." (Emphasis added)

The Majority's interpretation is strained and fails to give effect to the statute as a whole. When a kidnapping victim is not "released alive," this fact makes kidnapping a capital offense, but there is no statute that specifies that this also, in and of itself, is an aggravating circumstance making the offender eligible for the death penalty.

Certainly, KRS 532.025(2) allows aggravating circumstances other than those specifically enumerated in that section to be taken into consideration by the jury in its deliberations, but *in addition*, by using the conjunctive "and," the statute requires at least one of the enumerated statutory circumstances to be found before the death penalty or life without parole for twenty-

five (25) years can be imposed. This is so regardless of whether the crime is murder *or* kidnapping or murder *and* kidnapping. This conclusion is inescapable because otherwise the General Assembly would have used the disjunctive "or" instead of the conjunctive "and" between the two phrases in KRS 532.025(2).

There is still another reason why logic compels this interpretation of our death penalty statute. The statute was written with an eye to complying with the then recent decisions of the United States Supreme Court stating constitutional minimums for a death penalty statute. *Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976), *rehearing denied* 429 U.S. 875, 96 S.Ct. 197, 198, 50 L.Ed.2d 158 (1976), mandates "a jury's discretion must be channeled, ... it is always circumscribed by the legislative guidelines." The statutory interpretation in our Majority Opinion eliminates the need to specify a statutory aggravating circumstance to put the defendant in the class eligible for the death penalty as required by United States Supreme Court decisions. Our interpretation would extend to any capital case, a murder case as well as a kidnapping case where the victim is not released alive.

We have fashioned an interpretation of our death penalty statute that will fail the constitutional minimum. Our decision interprets our statutes to permit the death penalty to be imposed (as well as life without the possibility of parole for twenty-five years) without the statutory narrowing of the death eligible class required by *Gregg v. Georgia, supra, Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), and their progeny. For example, *see Godfrey v. Georgia,* 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980), holding unconstitutional a portion of the Georgia statute allowing the death penalty when the murder was found outrageously or wantonly vile, horrible or inhuman, as a statute too vague to serve as a substantive predicate.

If kidnapping is to be a statutory aggravating circumstance, in and of itself, which makes a murderer eligible for the penalty of death or life without parole for twenty-five (25) years, the General Assembly should have so enumerated in KRS 532.-025(2).

I would reverse on the aggravated punishment and remand to the trial court for resentencing in accordance with KRS 532.-030.

VANCE, J., joins this dissent.