# IMPORTANT NOTICE
## <u>NOT TO BE PUBLISHED OPINION</u>

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, CR 76.2▭▭▭▭▭, THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

# $\mathfrak{Supreme\ Court\ of\ Kentucky}$

## 2017-SC-000594-MR

DATE 11/26/18 Kim Redman, DC

JERRY D. LOTZ      APPELLANT

ON APPEAL FROM JEFFERSON CIRCUIT COURT
V.      HONORABLE JUDITH E. MCDONALD-BURKMAN, JUDGE
NO. 15-CR-001659

COMMONWEALTH OF KENTUCKY      APPELLEE

## MEMORANDUM OPINION OF THE COURT

## AFFIRMING, IN PART, REVERSING, IN PART, AND REMANDING

A circuit court jury found Jerry D. Lotz guilty of two counts of kidnapping, two counts of first-degree robbery, one count of first-degree burglary, one count of theft by unlawful taking over $500, and of being a first-degree persistent felony offender.[1] The jury recommended, and the trial court adopted, a sentence of thirty years' imprisonment.[2] Lotz now appeals the resulting judgment as a matter of right,[3] raising three issues for review. For the reasons stated below, we affirm, in part and reverse, in part, vacating Lotz's

---

[1] Lotz was also charged with possession of drug paraphernalia, operating a motor vehicle on a suspended license, and failure to comply with the sex offender registry. Immediately before final sentencing, Lotz pleaded guilty to these charges.

[2] Lotz also received a total sentence of one-year imprisonment for the charges of which he pleaded guilty, all to run concurrently with his 30-year sentence.

[3] Ky. Const. § 110(2)(b).

theft by unlawful taking conviction but upholding the remainder of the trial court's judgment.

## I. BACKGROUND.

Two individuals, Lenna Soltau and Grant McLaren, were sitting in the kitchen of Soltau's residence when a male intruder, purportedly Jerry D. Lotz, holding a knife, walked in the open back door. The intruder announced, "This is a hold-up" and "asked [Soltau and McLaren] to get on the floor so he could check [them]."

The intruder went through McLaren's back pockets, then picked up McLaren's cell phone, which was laying on the counter. McLaren told the intruder that the phone would not be of much use to him because "that's a Johannesburg, South African one, not much use to you." The intruder responded, "well, if you're from . . . Johannesburg, I'm from Tallahassee." The intruder then went through Soltau's purse, pulling out cards from her wallet, and after finding no cash, told the victims that they must take him to the bank to get money. The intruder threatened to kill Soltau and McLaren if they tried anything and said he had a gun and that others were standing watch outside with guns.

The intruder, Soltau, and McLaren then left the residence and got into Soltau's white Volvo. Soltau was in the driver's seat, McLaren was in the front passenger seat, and the intruder was in the backseat. Soltau then told the intruder that they had to go back into the house so she could retrieve her I.D. to withdraw the amount of money he was asking for. The intruder was apparently upset with this but agreed to reenter the house to get the I.D.

2

Everyone then got out of the car, the intruder took Soltau's car keys from her, and they began walking toward the house. On the way, the intruder stopped McLaren to take his camera, and McLaren gave it to him. As McLaren made it inside of the house, Soltau pushed McLaren farther inside the house and slammed the door locking out the intruder. As Soltau and McLaren then began notifying authorities, the intruder fled in Soltau's Volvo.

Soltau and McLaren then began relaying to authorities the events that occurred, a description of the man, and the Volvo's information. Soltau described that the intruder "had a very southern accent." Soltau and McLaren gave descriptions of the intruder but noted that they were unable to see his face because he covered it with a black cloth.

Later that night, Lieutenant Aaron Crowell encountered what appeared to be an intoxicated driver trying to park his car. Lieutenant Crowell approached the car as Lotz, the lone occupant, was exiting the driver's seat. Lieutenant Crowell detained Lotz after this observation and·learning that the vehicle was a reported stolen white Volvo. Lieutenant Crowell searched Lotz for weapons and found a "large pocket knife" on him.

Officer Danny Zummach arrived at the scene, searched Lotz, and found McLaren's stolen camera in Lotz's back pocket. The grand jury indicted Lotz for the crimes stated earlier. He was found guilty by a jury and sentenced accordingly.

## II. ANALYSIS.

Lotz now appeals the final judgment, raising three issues for review. That the first two issues are preserved for our review is undisputed. Lotz concedes that the last issue is unpreserved.

### A. The trial court did not err when refusing to admonish the jury that the jury determines whether Lotz speaks with the same accent that Soltau associated with the perpetrator.

During trial, the Commonwealth called Detective Angela Snook to testify. Snook was the lead detective in the case and interviewed Lotz. Lotz takes issue with an exchange between the Commonwealth and Snook at trial. During direct examination, the following exchange took place between the Commonwealth and Snook before the Commonwealth played for the jury a segment of a recording of Lotz speaking with Snook:

> Commonwealth: And before I play it, at this point when you've met with him, did you have a description from the victims of what he looked like?
>
> Snook: On the report, I had called the victim after I attempted to talk to him.
>
> Commonwealth: Ok. And did she mention anything about his voice?
>
> Snook: She said it was a southern accent.
>
> Commonwealth: Ok. And did he match that description?
>
> Snook: Yes, ma'am.

Lotz argues that the Commonwealth's question of whether Lotz "match[ed] that description" and Snook's answer that he did violates Kentucy Rules of Evidence ("KRE") 701(b)'s prohibition against certain lay witness testimony. Lotz argues that the trial court should have instructed the jury that

4

it is for them to decide whether Lotz speaks with the same accent that Soltau associated with the perpetrator. In other words, Lotz characterizes the Commonwealth's questions and the answers elicted from Snook asstating that Lotz's southern accent matches the southern accent of the perpetrator. This mischaracterizes the Commonwealth's questioning.

KRE 701 allows non-expert witnesses to provide opinion and inference testimony when those opinions and inferences are: (1) rationally based on the perception of the witness; (2) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue; and (3) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702. A careful examination of the Commonwealth's inquiry and Snook's responses evidences that Snook simply confirmed that Lotz has a southern accent. There was no opinion offered or inference suggested by Snook that Lotz's southern accent was the same southern accent with which the perpetrator allegedly spoke.

Recall the line of questioning: 1) "[D]id [Soltau] mention anything about his voice?"; 2) "She said it was a southern accent"; 3) "And did he match that description?"; 4) "Yes, ma'am." All that Snook confirmed in this line of questioning was that Lotz has a southern accent. Lotz reads too much into this line of questioning when he suggests that what Snook really did was to confirm that Lotz and the perpetrator spoke with the same southern accent. Rather, what the Commonwealth did was simply elicit from Snook that Lotz speaks with a southern accent. The Commonwealth did nothing to usurp the jury's fact-finding role as to whether Lotz and the perpetrator had the same southern

5

accent, or, because both the perpetrator and Lotz speak with a southern accent, they must be the same person.

Even Lotz readily admits that "[t]he Commonwealth may have been able to ask Detective Snook . . . whether or not Jerry Lotz speaks with a particular accent." This is exactly what the Commonwealth did. The argument Lotz makes that anything more was done is not supported by the content of the Commonwealth's direct examination of Snook.

The trial court properly refused to admonish the jury here because there was nothing to correct. "We perceive no reason why a witness could not . . . identify a voice as being that of a particular race or nationality, so long as the witness is personally familiar with the general characteristics, accents, or speech patterns of the race or nationality in question."[4] An officer in the state of Kentucky would surely be familiar with southern accents.

Lotz makes the argument that because the jury heard firsthand Lotz speak, as he participated in a recorded interview that was played for the jury immediately after Snook's questioning, it was not "helpful" to the jury for it to hear Snook's observation concerning Lotz's accent, thus violating KRE 701. But even accepting any measure of validity to Lotz's argument, the purported trial court error would be harmless. It cannot be said that admission of Snook's opinion that Lotz speaks with a southern accent "substantially swayed"[5] the jury when the jury had the ability to evaluate Lotz's accent firsthand. So even if

---

[4] *Clifford v. Commonwealth*, 7 S.W.3d 371, 375–76 (Ky. 1999) (under KRE 701, allowing officer to testify that the voice he heard sounded like that of a black male).

[5] *See Murray v. Commonwealth*, 399 S.W.3d 398, 404 (Ky. 2013).

we were to accept Lotz's argument that the trial court erred when it allowed Snook to testify about Lotz's accent, because the jury was able to evaluate firsthand Lotz's accent from a recording of his voice, we fail to see how such a purported error can constitute anything but harmless error.[6]

## B. The trial court did not err when it found that the kidnapping exemption did not apply.

Lotz next argues that the trial court erred in finding that the kidnapping exemption did not apply because the evidence established that the restraint of Soltau and McLaren was only incidental to the robbery Lotz committed. We disagree.

KRS 509.050, the kidnapping exemption statute, states, "A person may not be convicted of . . . kidnapping when his criminal purpose is the commission of an offense defined outside this chapter and his interference with the victim's liberty occurs immediately with and incidental to the commission of that offense, unless the interference exceeds that which is ordinarily incident to commission of the offense which is the objective of his criminal purpose."

Lotz essentially argues that the events giving rise to his charges all constitute the same robbery and the restraining of Soltau and McLaren at Soltau's residence, in addition to forcing Soltau and McLaren into the car, was simply incidental to the commission of the robbery. The Commonwealth agrees with this. What the parties dispute is whether the "interference with the victim[s'] liberty" in this case "exceed[ed] that which is ordinarily incident to

---

[6] *See* RCr 9.24.

7

commission of the offense which is the objective of his criminal purpose."[7] The

Commonwealth argues that Lotz's forcing Soltau and McLaren out of the house

into the white Volvo for the bank run "was outside of the normal incidents of a

robbery." Lotz argues in response that those actions simply constituted a part

of the entire robbery because it was always Lotz's objective to obtain money,

and a trip to the bank furthered that objective.

As a preliminary matter, we review the trial court's determination as to

whether the kidnapping exemption applies for abuse of discretion.[8] "The test

for abuse of discretion is whether the trial judge's decision was arbitrary,

unreasonable, unfair, or unsupported by sound legal principles."[9]

Because the application of the exemption is to be determined on a case-

by-case basis,[10] comparing the circumstances of this case with another

provides guidance as to why we cannot say that the trial court abused its

discretion in denying Lotz's request for application of the kidnapping

exemption. The closest comparison we can make is to our decision in *Seay v.

Commonwealth.*[11]

In *Seay*, the defendant, Seay, was convicted of four counts of kidnapping

in conjunction with a myriad of other charges, including robbery and

---

[7] KRS 509.050.

[8] *Duncan v. Commonwealth*, 322 S.W.3d 81, 94 (Ky. 2010).

[9] *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999) (internal citations omitted).

[10] *See* Leslie W. Abramson, Ky. Prac. Substantive Crim. L., § 4:28 (December 2017 update) (citing *Harris v. Commonwealth*, 793 S.W.2d 802 (Ky. 1990)); *Gilbert v. Commonwealth*, 637 S.W.2d 632 (Ky. 1982); *Calloway v. Commonwealth*, 550 S.W.2d 501 (Ky. 1977)).

[11] 609 S.W.2d 128 (Ky. 1980).

8

burglary.[12] Seay and an unknown accomplice forcibly entered an apartment, Apartment 221, robbing the seven inhabitants, one of whom was a woman named Becky Lucas.[13] Seay and the accomplice then forced Lucas at gunpoint out into the hallway, making Lucas knock on the door of another apartment, Apartment 222, to allow them to gain access.[14] Seay and the accomplice used this tactic again on another apartment, Apartment 223.[15] Seay and the accomplice took the victims they found, Garland and Kathy Myers and their small son, and Lucas back to Apartment 222 where they were tied up on the floor.[16]

Seay argued on appeal that the kidnapping exemption in KRS 509.050 applied to negate three of the kidnapping accounts, attributable to Lucas and the Myerses, because "the interference with their liberty occurred incidental to the robberies . . . ."[17] Rejecting that argument, this Court found that "[t]he acts of tying [Lucas and the Myerses] up, moving them from one apartment to another, and using Ms. Lucas to get into two other apartments precludes application of the statute. The restraint on their liberty went far beyond that which was necessary to carry out the robberies."[18] Finally, the Court noted that

---

[12] *Id.* at 130.
[13] *Id.*
[14] *Id.*
[15] *Id.*
[16] *Id.*
[17] *Id.* at 131.
[18] *Id.*

9

ruling otherwise "would be a mockery," because it would result in an impermissible broadening of the proper interpretation of KRS 509.050.[19]

Comparison to *Duncan v. Commonwealth*[20] may also be of benefit. In *Duncan*, this Court rejected application of the kidnapping exemption statute when the defendant, Duncan, forced the victim off of the street down an alley and into a secluded area behind an abandoned house where he sexually abused her.[21] We found that "the additional restraint [the defendant] imposed when he forced [the victim] to walk for five to ten minutes through several blocks to the area behind the school was neither brief in time nor short in distance, for the purposes of the exemption statute, and exceeded what was merely incidental to the alleged sexual offenses."[22]

In this case, Lotz unlawfully entered Soltau's home and restrained her and McLaren while he robbed them. Lotz then forced Soltau and McLaren into Soltau's car. It is at this point that we think the kidnapping exemption statute no longer applies.

If Lotz had simply left the premises after he robbed Soltau and McLaren inside the residence, then the kidnapping exemption statute would prevent Lotz from being charged with kidnapping. But this further act of forcing Soltau and McLaren out of the residence to walk to and get into the automobile pushed the interference with Soltau's and McLaren's liberty beyond "that which

---

[19] *Id.*

[20] 322 S.W.3d 81, 94–95 (Ky. 2010).

[21] *Id.* at 94.

[22] *Id.* at 95.

10

is ordinarily incident to commission of" robbery.[23] This act of forcing Soltau and McLaren from the residence into a car is much like Seay's forcing Lucas and the Myerses from one apartment to another and like Duncan's forcing his victim off of the campus and into a secluded area. And Soltau's quick thinking, allowing Soltau and McLaren to escape the control of Lotz, does not detract from the act of kidnapping.

## C. The trial court subjected Lotz to double jeopardy when Lotz was convicted of both robbery and theft by unlawful taking.

Lotz takes issue with the fact that he was convicted of first-degree robbery and theft by unlawful taking. He argues that the entirety of the events that took place constituted either one robbery or one theft, and that two separate convictions for the same crime violate double jeopardy.[24] We agree with Lotz and vacate his theft by unlawful taking charge. Although this issue is unpreserved, "under our longstanding rule, double jeopardy questions may be reviewed on appeal, even if they were not presented to the trial court."[25]

The Commonwealth attempts to bifurcate the events taking place in this case as two different robberies or thefts—1) everything occurring between Lotz's entering the home and Soltau's and McLaren's escaping him, and 2) Lotz's theft of Soltau's white Volvo. But Lotz correctly points out Kentucky's longstanding rule that "the theft of multiple items at the same time from the same place"

---

[23] KRS 509.050.

[24] *See* U.S. Const. amend. V; Ky. Const. § 13.

[25] *Terry v. Commonwealth*, 253 S.W.3d 466, 470 (Ky. 2007) (citing *Beaty v. Commonwealth*, 125 S.W.3d 196, 210 (Ky. 2003)).

11

constitutes one robbery or theft.[26] We will not attempt to craft an exception based on the circumstances of this case.

Both Lotz and the Commonwealth agree that "[t]he remedy for these types of double jeopardy violations is to vacate the conviction for the lesser offense."[27] Theft by unlawful taking being a lesser offense than first-degree robbery,[28] we therefore vacate Lotz's theft by unlawful taking conviction.

## III.     CONCLUSION.

For the reasons stated above, we affirm the judgment in part and reverse in part, vacating Lotz's theft by unlawful taking conviction while upholding the remainder of the trial court's judgment. The case is remanded to the trial court for entry of a new judgment consistent with this opinion.

All sitting. All concur.

COUNSEL FOR APPELLANTS:

Daniel T. Goyette
Joshua Michael Reho
Louisville Metro Public Defender of Counsel

COUNSEL FOR APPELLEE:

Andy Beshear
Attorney General of Kentucky

Todd Dryden Ferguson
Assistant Attorney General

---

[26] *Wilson v. Commonwealth*, 438 S.W.3d 345, 352 (Ky. 2014).

[27] *Lloyd v. Commonwealth*, 324 S.W.3d 384, 391 n.26 (Ky. 2010).

[28] *Id.*

12